UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re DREIER LLP,                                    Chapter 11

           Debtor.                               No. 08-15051-SMB

--------------------------------------------------------x

COSMETICS PLUS GROUP LTD.,
ROBIN BARTOSH and TOBY BARTOSH,

           Appellants,

      -v-                                           No.  16CV575-LTS-RLE

SHEILA M. GOWAN,
*In her Capacity as Plan Administrator*
*for Dreier LLP*,

           Appellee.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

           Appellants Cosmetics Plus Group Ltd. ("CPG"), Robin Bartosh and Toby Bartosh

(collectively, the "Claimants" or "Appellants") appeal from the January 15, 2016, Order

Granting Plan Administrator's Objection and Reclassifying Proofs of Claim Nos. 171, 172 and

173 (Docket Entry No. 1 at ECF pp. 20-21, the "Order") entered by United States Bankruptcy

Judge Stuart M. Bernstein in the above-captioned bankruptcy case.  For the reasons set forth in

an accompanying Memorandum Decision (<u>see id.</u> at ECF pp. 3-19 ("Reclassification Op.")), the

Order sustained the objection of bankruptcy plan administrator Sheila M. Gowan ("Gowan" or

"Appellee") to Appellants' proofs of claim numbers 171, 172 and 173, and reclassified those

claims as general unsecured claims.  The Court has jurisdiction of this appeal pursuant to

28 U.S.C. §§ 158 and 1331.

Appellants filed this appeal on January 26, 2016, and filed their brief with the Court on March 8, 2016.  (Docket Entry No. 6.)  Appellee filed her opposition on April 7, 2016 (Docket Entry No. 8), and Appellants filed a reply on April 21, 2016.  (Docket Entry No. 12.) The Court heard oral argument on the appeal on June 23, 2016.  The Court has considered all of the parties' submissions, as well as the content of the oral argument, carefully.  For the reasons stated herein, Judge Bernstein's January 15, 2016, Order Granting Plan Administrator's Objection and Reclassifying Proofs of Claim Nos. 171, 172 and 173, is affirmed.

BACKGROUND[1]

Factual History

On August 10, 2001, the Cosmetics Plus Group filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. (Reclassification Op. at ECF p. 4.)  CPG retained the law firm of Traub, Bonacquist & Fox LLP (the "Traub Firm") as bankruptcy counsel.  (Id.)  When Traub Firm members Paul Traub and Steven Fox became partners at Dreier LLP ("Dreier"), CPG's bankruptcy representation shifted to Dreier.  (Id.)

In 2003, CPG filed an adversary proceeding against its insurer, American International Group ("AIG"), seeking to recover under a business interruption policy for losses

---

[1]     The facts recited herein are drawn from Judge Bernstein's Memorandum Decision and have been reviewed for clear error.  Citations to Judge Bernstein's Decision incorporate by reference Judge Bernstein's citations to the underlying evidentiary submissions presented at trial.  Citations to the Plan Administrator's trial exhibits are indicated by the designation "PX," and citations to the Claimants' trial exhibits are indicated by the designation "DX."

sustained due to the September 11, 2001, terrorist attacks.  (Reclassification Op. at ECF p. 4; DX B.)  In an order dated February 26, 2008, Bankruptcy Judge Prudence Beatty approved a settlement agreement between AIG and CPG (the "Settlement Agreement") pursuant to which AIG agreed to pay $350,000 to CPG care of Dreier.  (Id. at ECF pp. 4-5; DX C at pp. 3-4.)  On March 5, 2008, AIG issued a check for $350,000 to "Dreier LLP, as attorneys for Cosmetics Plus Group, Ltd. and Cosmetics Plus South, Ltd."  (Reclassification Op. at ECF p. 5; DX H.)  These funds were deposited into the Dreier LLP attorney trust account ending in 5966 (the "5966 Account") on March 14, 2008.  (Id.; DX H; PX 15.)  At the time of this deposit, the 5966 Account contained Dreier LLP client funds and operating funds, as well as the proceeds of attorney Mark Dreier's note fraud scheme.  (Reclassification Op. at ECF p. 5 (citing Joint Pretrial Order, dated June 25, 2015, which contained parties' stipulation of facts in proceeding below).)  On March 14, 2008, the daily ending balance of the 5966 Account was $3,090,191.44.  (Id.)  However, by mid-August 2008, the 5966 account had been depleted and carried a negative balance for several days.  (Id. (citing Joint Pretrial Order).)

On October 30, 3008, Judge Beatty ordered the dismissal of CPG's Chapter 11 cases (the "Dismissal Order").  (See id.; DX F.)  The Dismissal Order directed CPG to distribute its cash on hand to pay administrative expenses and U.S. Trustee fees, and then to distribute all remaining cash to the secured creditors (the Bartoshes) in partial satisfaction of their claim.  (Id.; DX F.)  On that date, Dreier's 5966 Account had a balance of nearly $48 million.  (Id.; PX 9.)  Moreover, while Traub and Fox had previously joined Dreier, the Traub firm maintained a separate account (the "Traub Firm Account") at Citibank which included some CPG funds, but none of the Settlement Agreement funds.  (Reclassification Op. at n.4.)

On December 2, 2008, Mark Dreier was arrested in connection with his note

fraud scheme.  (Reclassification Op. at ECF p. 6.)  That same day, Fox sent an email to

individuals at Dreier explaining that Dreier was holding $350,000 in its client trust account on

behalf of CPG.  (Id.)  Fox asked for a check to be drawn payable to "Robin and Toby Bartosh,"

to be forwarded to him for delivery to CPG.  (Id. at ECF p. 6; DX R.)  The check never issued.

(Id.)  The following day, Traub spoke with an individual at Dreier about the release of client

trust funds for CPG.  (Reclassification Op. at ECF p. 6.)  On December 4, 2008, Dreier initiated

two wire transfers from the 5966 Account to the Traub Firm Account.  (Id.; PX 11.)  One of

those transfers was in the amount of $441,145.58, and included the $350,000 owed to the

Claimants under Judge Beatty's Dismissal Order, as well as amounts corresponding to two other

Traub Firm matters.  (Reclassification Op. at ECF p. 6; PX 11; DX U.)  Once this transfer was

received, it was held in a Traub Firm escrow account.  (Reclassification Op. at ECF p. 7.)

On December 8, 2008, the Securities and Exchange Commission filed a

complaint alleging that Mark Dreier had violated federal securities laws through the sale of

certain notes.  (Id.; In re Dreier LLP, 429 B.R. 112, 119 (Bankr. S.D.N.Y. 2010).)  On December

10, 2008, Judge Miriam Cedarbaum of the Southern District of New York appointed a receiver,

who filed a voluntary Chapter 11 petition on behalf of Dreier on December 16, 2008.

(Reclassification Op. at ECF p. 7.)  On January 9, 2009, Gowan was appointed the Chapter 11

trustee.  (Id.)  Gowan thereafter contacted Traub seeking the return of the funds that had been

transferred to the Traub Firm Account from Dreier, which she would hold subject to further

instruction from the court.  (Id.; DX X.)  On February 27, 2009, the Traub Firm wired

$441,145.58 to Gowan's account from the Traub Firm Account.  (Reclassification Op. at ECF p.

7, DX X.)  These funds are held in a segregated escrow account pending further order of the

Bankruptcy Court.  (Reclassification Op. at ECF p. 7; DX X.)

On March 18, 2009, Robin and Toby Bartosh and CPG filed proofs of claim in the Dreier bankruptcy case.  (Reclassification Op. at ECF p. 7.)  Each proof of claim asserted a $350,000 secured claim against Dreier based upon its retention of the proceeds of the Settlement Agreement.  (Id. at ECF p. 8.)  Gowan, who had since become the Chapter 11 plan administrator, filed a claim objection on February 6, 2015, arguing that the proceeds of the Settlement Agreement had been "hopelessly commingled" with other funds in the 5966 Account, and asserting that the Claimants' secured claims should be reclassified as general unsecured claims.  (Id. at ECF p. 8.)  In response, the Claimants argued that the Traub Firm had failed to comply with the Dismissal Order in a timely way, and that the Settlement Agreement proceeds had been segregated and held by the Traub Firm for the benefit of the Claimants from December 4, 2008, until they were transferred to Gowan's account.  (Id.)  Moreover, the Claimants argued that the principles of equity required the imposition of a constructive trust on the Settlement Agreement funds for their benefit, and that such principles also supported the relaxation of the requirement that they be able to trace their interest in the funds.  (Id.)  In response, Gowan argued that, to the extent that the transfer of funds from the 5966 Account to the Traub Firm Account provided the Claimants with rights superior to those of general unsecured creditors, the transfer was an avoidable preference pursuant to 11 U.S.C. § 547(b).  Following a trial, Judge Bernstein sustained Gowan's objections, reclassifying Appellants' proofs of claim numbers 171, 172 and 173 as general unsecured claims.  (See Order.)

<u>DISCUSSION</u>

Federal district courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in proceedings that have been referred to the bankruptcy courts.  28 U.S.C. § 158.  Judge Bernstein's Order, which resolved Gowan's objections to Appellants' proofs of claim, is such a final order.  <u>See</u> Fed. R. Bankr. P. 8013.  The standard of review in a bankruptcy appeal is plenary.  <u>See</u> <u>In re MarketXT Holdings Corp.</u>, 346 F. App'x 744, 745 (2d Cir. 2009).  A district court "review[s] the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo." <u>Ball v. A.O. Smith Corp.</u>, 451 F.3d 66, 69 (2d Cir. 2006) (quoting <u>In re Enron Corp.</u>, 419 F.3d 115, 124 (2d Cir.2005)).  <u>See</u> <u>also</u> <u>In re Santiago-Monteverde</u>, 512 B.R. 432, 436 (S.D.N.Y. 2014) ("On appeal, the court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings") (internal quotation marks and citation omitted).

The Appellants offer three main arguments in support of their position that the Court should reverse Judge Bernstein's Memorandum Decision and Order: (1) Judge Bernstein erred in finding that the December 4, 2008, transfer of funds from the 5966 Account to the Traub Account was an avoidable preference; (2) the Dismissal Order issued by Judge Beatty created a legally enforceable obligation to turn over Settlement Agreement funds to the Bartoshes and CPG that provided them with an elevated priority interest in the funds held by Dreier in the 5966 Account; and, alternatively, (3) Judge Bernstein erred by failing to impose a constructive trust on the Settlement Agreement proceeds transferred from the 5966 Account to the Traub Account on December 4, 2008.  The Court examines each argument in turn.

*1. Preferential Treatment*

In his Memorandum Decision below, Judge Bernstein held that the transfer of funds from the 5966 Account to the Traub Account on December 4, 2008, created an express trust.  (<u>See</u> Reclassification Op. at ECF pp. 12-14.)[2]  Judge Bernstein also held, however, that because the express trust was created only a few days before the commencement of Dreier's Chapter 11 case, the transfer of funds from the 5966 Account into the Traub Firm Account constituted an avoidable preference pursuant to 11 U.S.C. § 547(b), and therefore was properly returned to Gowan upon her request in February 2009.

Section 547(b) of the Bankruptcy Code provides:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;

---

[2]    Judge Bernstein held that this transfer constituted the creation of an express trust because: (1) it was made for designated beneficiaries (CPG and Robin and Toby Bartosh); (2) to a designated trustee (Traub and/or the Traub Firm); (3) in the form of a fund or other property sufficiently designated to enable title of the property to pass to the trustee (deposited into the Traub Account); and (4) the funds were actually delivered with the intention of vesting legal title in the trustee (Gowan admitted that "[t]he record  . . . shows that, in requesting the Traub Firm Transfer, Traub intended to safe guard funds that he believed belonged to his clients pending further court order." Bernstein Op. at ECF p. 13 (citing <u>Plan Administrator's Memorandum of Law in Response to Post-Hearing Memorandum of Claimants Robin Bartosh, Toby Bartosh and the Cosmetics Plus Group Ltd. and in Further Support of Plan Administrator's Objection to Proof of Claim Nos. 171, 172 and 173</u>)).  <u>See</u> <u>Gowan v. Patriot Group, LLC (In re Dreier LLP)</u>, 452 B.R. 391, 420 (Bankr. S.D.N.Y. 2011) (quoting <u>In re Doman</u>, 68 A.D.3d 862, 863 (2d Dep't 2009) ("A valid express trust requires (1) a designated beneficiary, (2) a designated trustee, (3) a fund or other property sufficiently designated or identified to enable title of the property to pass to the trustee, and (4) actual delivery of the fund or property, with the intention of vesting legal title in the trustee.")).

(4) made –
    (A) on or within 90 days before the date of the
    filing of the petition; or
    (B) between ninety days and one year before the
    date of the filing of the petition, if such creditor at
    the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such a
creditor would receive if –
    (A) the case were a case under chapter 7 of this
    title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to
    the extent provided by the provisions of this title.

11 U.S.C.S. § 547(b) (LexisNexis 2016).  Moreover, to constitute an avoidable preference, the

property transferred must have been part of the debtor estate.  See, e.g., Matter of O.P.M.

Leasing Services, Inc., 46 B.R. 661, 666 (Bankr. S.D.N.Y. 1985) ("To establish an avoidable

preference, the Trustee must prove by a preponderance of the evidence the following elements,

as set forth in Code section 547(b): (i) a transfer of property of the debtor; (ii) to or for the

benefit of a creditor; (iii) for or on account of an antecedent debt; (iv) made while the debtor was

insolvent; (v) made on or within 90 days before the date of filing of the petition; (vi) that enables

such creditor to receive more than it would receive in a Chapter 7 liquidation if the transfer had

not been made.").

        Appellants first argue that the funds transferred to the Traub Firm Account from

the 5966 Account were not part of the Dreier estate.  (See Docket Entry No. 6, Appellant's Brief

("Appellant Br.") at pp. 12-14.)  Appellants claim that, because Dreier received the Settlement

Agreement proceeds from AIG pursuant to the direction of Judge Beatty, and because Dreier

was required to hold these funds in escrow for CPG and solely on CPG's behalf, the Settlement

Agreement proceeds never became part of the Dreier bankruptcy estate.  (See id.)  Appellants

appear to argue that the transfer of the Settlement Agreement proceeds from AIG to Dreier

created a statutory trust on behalf of the Claimants, and in this connection claim that "it is axiomatic that funds held in trust for another are not the property of the bankruptcy estate." (Appellant Br. at p. 12 (citing In re Mishkin, 138 B.R. 410 (Bankr. S.D.N.Y. 1992).)  In making this argument, Appellants cite 11 U.S.C. § 541(d) for the proposition that "[p]roperty in which the debtor holds, as of commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  (Appellant Br. at p. 13 (quoting 11 U.S.C.S § 541(d) (LexisNexis 2016).)  Therefore, Appellants argue, because Dreier held the Settlement Agreement proceeds in trust for CPG and the Bartoshes, those funds never became the property of the Dreier bankruptcy estate and are not subject to the preference provisions of the Bankruptcy Code.  (See Appellant Br. at p. 13 (citing Selby v. Ford Motor Co., 590 F.2d 642, 649 (6th Cir. 1979).)

        Appellants ignore, however, what the Dreier firm actually did with the Settlement Agreement proceeds.  The bankruptcy court found that the Dreier firm had completely dissipated the holdings of the 5966 Account by August 2008.  That finding is well supported by the trial record, including bank records, and is not clearly erroneous.  Nor did the bankruptcy court err in finding that the Settlement Agreement proceeds could not be traced into the funds that were subsequently added to the 5966 Account, which consisted of commingled funds from various Dreier clients.  (See Reclassification Op. at ECF p. 4; PX 7.)

        The Court has reviewed the bankruptcy court's conclusions of law de novo, and finds that it correctly held that the monies constituting the December 2008 transfer of funds from Dreier to the Traub Firm account were, in fact, property of the Dreier estate.  In reaching this conclusion, Judge Bernstein relied upon the decision of Judge Batts in a separate bankruptcy

appeal stemming from the Dreier bankruptcy, in which she held that settlement funds that were
voluntarily transferred into the Dreier 5966 account – albeit under the pretext of a fraudulent
inducement – become property of the Dreier estate, thus affirming Judge Bernstein's holding in
that regard.  See Gardi v. Gowan (In re Dreier LLP), No. 10CV 4758-DAB, 2010 WL 3835179,
at *5 (S.D.N.Y. Sept. 10, 2010) (affirming bankruptcy court finding that settlement funds
voluntarily transferred into the Dreier 5966 Account were not technically "stolen" and were thus
considered part of the bankruptcy estate).  Here, the Settlement Agreement proceeds were
similarly willingly transferred to the Dreier 5966 Account prior to the transfer of the relevant
funds to the Traub Firm Account.  Thus, the funds constituting the Traub Firm transfer were
appropriately deemed property of the Dreier estate by Judge Bernstein.

   Moreover, the Second Circuit has long recognized that "property converted,
embezzled or otherwise taken by the bankrupt, or obtained by him by fraud, can be claimed from
the bankrupt estate only so long as it can be definitely traced, with the consequence that an
attempted repayment by the bankrupt prior to bankruptcy is a preference, except when made
from the very property taken."  Morris Plan Indus. Bank of New York v. Schorn, 135 F.2d 538,
539 (2d Cir. 1943) (emphasis added).[3]  Here, the Settlement Agreement proceeds clearly cannot
be traced, as they were deposited into the 5966 Account in March 2008, and that account was
fully depleted at some point in August 2008.  Indeed, any trust that Appellants claim was created
by the transfer of funds from AIG to Dreier in March 2008 – which, Appellants argue, entitles

---

[3]   While Appellants argue that the Morris Plan court "expressly observed that it did
not matter 'whether or not the company would, attempt to, or could trace the
specific funds and reclaim them from the bankrupt estate,'" Appellants present
this quote out of context and in so doing misrepresent the Second Circuit's
holding, which was specific to a scenario wherein the debtor attempted to
withhold assets from the trustee by claiming a third party's interest in those
assets.

them to priority over funds in the 5966 Account – was clearly destroyed when the 5966 Account

was depleted.  See, e.g., In re St. Theresa Properties, Inc., 152 B.R. 852, 858 (Bankr. S.D.N.Y.

1993) ("the existence of a trust, be it statutorily or constructively imposed, is insufficient,

standing alone, to entitle the beneficiary to remove from the estate the property which he claims;

unless the beneficiary traces the trust res he will be relegated to the status of a general unsecured

creditor.").  Judge Bernstein committed no error in holding that "[w]hen a trust account is fully

dissipated, a beneficiary of a trust is generally no longer able to trace the funds and thus, no

longer has rights superior to those of other creditors."  (Reclassification Op. at ECF p. 10.)  The

funds constituting the transfer from Dreier to the Traub Firm were therefore properly deemed

property of the Dreier estate, as required for a finding of an avoidable preference.[4]

        Appellants further argue that the transfer of funds from the 5966 Account to the

Traub Firm Account was not a transfer made on account of an antecedent debt.  (See Appellant

Br. at p. 14.)  In the Memorandum Decision, the Bankruptcy Court held that "the transfer

satisfied an antecedent debt [because] Dreier LLP had converted the Settlement Agreement

proceeds and was obligated to restore them."  (Reclassification Op. at ECF p. 15.)  Appellants

---

[4]     The cases cited by Appellants on this point are inapposite.  In re Mishkin, 138
B.R. 410 (Bankr. S.D.N.Y. 1992) involved funds that were identifiable and
traceable as proceeds of converted property, and thus were not property of the
bankruptcy estate.  See also Selby, 590 F.2d 642 (same); In re Valerino
Construction, Inc., 250 B.R. 39 (Bankr. W.D.N.Y. 2000) (same).  In re Royal
Business School, Inc., concerned money that was placed into an escrow account
prior to commencement of the debtor's bankruptcy case, which remained
segregated and identifiable and, therefore, never became property of the
bankruptcy estate.  See 157 B.R. 932 (Bankr. E.D.N.Y. 1993).  In re Bake-Line
Group, LLC, involved a scenario wherein the debtor mistakenly deposited a
misdelivered check made out to another party into its own bank account.  The
court determined that, because of this mistake, the funds were subject to a
constructive trust from the moment of their deposit and remained traceable and,
thus, were not considered property of the debtor's estate.  See 359 B.R. 566
(Bankr. D. Del. 2007).

invoke a Sixth Circuit decision, <u>In re Johnson</u>, for the proposition that the bankrupt's "fraud, embezzlement, misappropriation or defalcation while acting as an officer of in any fiduciary capacity" does not give rise to debts that are dischargeable in bankruptcy.  (Appellant Br. at p. 14 (quoting <u>In re Johnson</u>, 691 F.2d 249, 251 (6th Cir. 1982).)  Appellants claim that Dreier received the Settlement Agreement proceeds from AIG for CPG in a fiduciary capacity, and argue that "a debt created while acting in a fiduciary capacity is a special debt created by a breach of trust obligations defined by law, and is separate and distinct from any underlying contractual debt."  (<u>See</u> Appellant Br. at p. 14 (quoting <u>In re Johnson</u>, 691 F.2d at 251).)  Appellants further assert, in conclusory fashion, that "[t]heft or embezzlement is a crime, or a tort but not a debt and this rule is not, nor should it be, any different in the context of a preference claim."  (Appellant Br. at p. 14.)

        While Appellants' statements regarding the nature of obligations flowing from breaches of fiduciary duty are generally correct, they do not provide any foundation for their attempted characterization of the obligation Dreier attempted to satisfy when it transferred funds to the Traub Account as anything other than an antecedent debt.  Indeed, the <u>In re Johnson</u> Court explicitly recognized that the relevant subdivision "of the Bankruptcy Act provide[d] that <u>debts created by</u> the bankrupt's fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity, are not dischargeable in bankruptcy proceedings."  <u>In re Johnson</u>, 691 F.2d at 251 (emphasis added).  Nondischargeability does not alter the underlying character of the obligation and is thus irrelevant to the question of whether the transfer constitutes a preference.  Indeed, as Appellee asserts, a non-dischargeable debt is still a debt within the meaning of 11 U.S.C. § 547(b)(2), whether it is referred to as a "special debt" or simply a debt.  In addition, as Appellants recognize, Judge Beatty's Dismissal Order obligated

Dreier to turn over to Appellants $350,000, or the equivalent of the Settlement Agreement proceeds.  (<u>See</u> Appellant Br. at pp. 18-19.)  That obligation was, quite obviously, antecedent to the transfer of funds to the Traub Firm Account.  The Bankruptcy Court's conclusion that the December 2008 transfer of funds from the 5966 Account to the Traub Firm Account was made in payment of an antecedent debt was thus sound.

For these reasons, the Court finds that the Bankruptcy Court properly concluded that the transfer of Settlement Agreement proceeds from the 5966 Account to the Traub Firm Account constituted a preferential transfer subject to avoidance under 11 U.S.C. § 547(b), and that such preferential transfer was properly returned to Gowan in February 2009.

### 2. *Effect of Judge Beatty's October 30, 2008, Dismissal Order*

Appellants argue that Judge Prudence Carter Beatty's October 30, 2008, Dismissal Order, which dismissed the CPG Chapter 11 proceedings and directed CPG to distribute the remaining cash from its bankruptcy estate to its secured creditors (the Bartoshes), elevated the priority of Appellants' claims in the instant proceedings over those of the other general unsecured creditors, asserting that "it is undisputed that the 'cash' referred to in Judge Beatty's Order consisted of the funds which were the proceeds of the settlement of the Adversary Proceeding against CPG's insurer AIG."  (Appellant Br. at p. 18.)  While Judge Beatty's order required a transfer of funds and appears to have assumed the continued existence and availability of the AIG Settlement Proceeds, Appellants' further argument that the Order "had the effect of cutting off any claim Dreier LLP had to the funds held in escrow on behalf of CPG inasmuch as it directed those funds to be paid to CPG's secured creditors no later than November 14, 2008," and that this obligation "took preference" within the context of the Dreier bankruptcy proceedings (<u>id.</u> at p. 19), is factually and legally unfounded.

The cases cited by Appellants stand for nothing more than the premise that a court order requiring payment of money creates a legal obligation similar to that of a contract. Appellants have cited no authority holding that such an obligation constitutes anything more than a general unsecured claim in the context of bankruptcy proceedings.  As explained above, the Bankruptcy Court's finding that the assets of the 5966 Account consisted, after the negative balances in August 2008, of commingled funds of various Dreier clients and were not traceable to CPG's Settlement Proceeds was not clearly erroneous.  Under these circumstances, the Dismissal Order could not, and did not, create anything other than an obligation to transfer general Dreier assets (the Settlement Proceeds having been dissipated long before).  It did not create any security or other interest in the transferred 5966 Account assets that insulated those funds from the claims of other Dreier creditors in the context of the bankruptcy proceeding.[5]

### 3. Constructive Trust

Appellants argue, in the alternative, that the bankruptcy court erred by not imposing a constructive trust on what the Appellants characterize as the Settlement Agreement proceeds that were transferred to the Traub Firm Account on December 4, 2008.  A constructive trust is properly imposed when "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest."  Sharp v. Kosmalski, 351 N.E.2d 721, 723 (N.Y. 1976).  The party seeking the imposition of such a trust under New York law must be able to show "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment."  In re First Cent. Fin. Corp., 377 F.3d 209, 2012 (2d Cir. 2004)

---

[5]     DX Y indicates that the "remaining cash" traceable to the CPG bankruptcy estate as of October 31, 2008, was $51,493.97, and that this cash was distributed in accordance with the priority scheme set out in the Dismissal Order.  (See DX Y.)

(internal citations omitted).  The claimant of the funds must also be able to identify and trace the trust res.  See, e.g. United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985) ("It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer.").  The bankruptcy court's determination that no funds in the 5966 Account were traceable to the settlement payment as of the time of the December 2008 transfer is also preclusive of Appellant's attempt to establish entitlement to a constructive trust.  (See Reclassification Op. at ECF p. 10 (citing Majutama v. Drexel Burnham Lambert Grp., Inc., 142 B.R. 633, 638 (Bankr. S.D.N.Y. 1992) ("When a fund has been exhausted, there can be nothing to identify in it.").)  The Court, after de novo review of the issue, also concurs in the bankruptcy court's determination that Appellants are not entitled to a relaxation of the tracing requirement because Appellants were unable to demonstrate that the bankruptcy estate would be unjustly enriched in the absence of a constructive trust, as the debtor estate would not retain any of the funds if the constructive trust failed (those funds would be distributed to the creditors of the estate).  (See Reclassification Op. at ECF p. 11 (citing In re Dewey & LeBeoeuf, LLP, 493 B.R. 421, 435 (Bankr. S.D.N.Y. 2013).)  Recognition of a constructive trust under these circumstances would, as the bankruptcy court acknowledged, merely prejudice other creditors whose assets had also been misused by the Dreier firm.  Equity is not served by disadvantaging one set of victims in order to restore another, where the only source of assets is a limited common pool.

Appellants' argument, urged on this appeal, that the imposition of a constructive trust is necessary to prevent exploitation of the bankruptcy system, is unavailing.  While it is undisputed that Dreier breached its fiduciary duty and did grievous injury, imposing a constructive trust on its remaining assets does nothing to punish Dreier or address any arguable

abuse by Dreier of the bankruptcy system.  Rather, since the assets that do remain are

insufficient to satisfy the claims of Dreier's creditors, constructive trust treatment of the assets

transferred from Dreier to the Traub Account would inflict further injury on others whose

fiduciary funds were similarly mishandled, and on other innocent creditors of the Dreier firm.

Far from preventing improper exploitation of the bankruptcy system, such an outcome would

undermine the orderly and equitable asset distribution process envisioned by the Bankruptcy

Code.[6]  In re Flanagan, 503 F.3d 171, 182 (2d Cir. 2007) ("[T]he effect of a constructive trust in

bankruptcy is to take the property out of the debtor's estate and to place the constructive trust

claimant ahead of other creditors with respect to the trust res . . . This type of privileging of one

unsecured claim over another clearly thwarts the principle of ratable distribution underlying the

Bankruptcy Code.").

---

[6]   The reclassification of Appellants' claims against the Dreier estate as unsecured is
without prejudice to the pursuit of any claims that Appellants may have against
non-debtor persons or entities in connection with the misuse of the Settlement
Proceeds.

<u>CONCLUSION</u>

For the foregoing reasons, the bankruptcy court's Memorandum Decision and corresponding Order Granting Plan Administrator's Objection and Reclassifying Proofs of Claim Nos. 171, 172 and 173 is affirmed in all respects.

The Clerk of Court is respectfully requested to enter judgment affirming the Bankruptcy Court's January 15, 2016, Order and to close this case.

SO ORDERED.

Dated: New York, New York
July 15, 2016

   /s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge